GREER, MILLS & CO. v. ESTATE OF T. M. RILEY, DECEASED, ET AL.

No. 808. Decided June 22, 1899.

1. **Estates—Executory Contract—Vendor's Lien—Costs of Foreclosure.**
Though a debt secured by a vendor's lien under an executory contract is not subject to be postponed to the general expenses of administration or to other preferred claims, it does not take preference over the costs of enforcing such lien. (P. 703.)

2. **Same.**
The holder of a vendor's lien against land reserved in the deed of conveyance, on foreclosure of his lien in administration proceedings on the estate of the grantee, and failure of the tract to bring the amount of the debt and costs of foreclosure, was not entitled, where the estate was insolvent, to receive the whole of the proceeds upon his claim, leaving the costs of the forclosure to be paid out of other property of the estate, to the detriment of holders of other secured claims whose security is postponed to the payment of costs of administration. (Pp. 701-704.)

ERROR to the Court of Civil Appeals for the Second District, in an appeal from Montague County.

Greer, Mills & Co. appealed from a judgment of the District Court on appeal from the County Court in the administration of the estate of T. M. Riley, decd. The judgment being affirmed by the Court of Civil Appeals, they obtained writ of error.

*Galloway, Templeton & Chambers,* for plaintiffs in error.—The estate in question being insolvent and the unincumbered assets thereof being insufficient to pay all of the costs and expenses of administration, appellants and Limestone County, and the property by which their re-

spective debts were secured, were severally liable for the respective pro rata portions of the amount necessary to be raised from the proceeds of the incumbered property to satisfy such unpaid costs; and it was error for the trial court to charge all such costs against the property on which appellants held valid liens. Sayles' Rev. Stats., arts. 2091, 2092, 2093, 2096; Williams v. Robinson, 56 Texas, 347; Jackson v. Ivory, 30 S. W. Rep., 716; Kraeger v. Wolff, 33 S. W. Rep., 663.

The unpaid costs and expenses of administration were a prior charge against the property by which the claims of appellants and Limestone County were respectively secured, and such lienholders were only entitled to receive the residue arising from the sales of their respective securities remaining after the satisfaction of such costs and expenses. Same authorities.

Each of the several debts of Limestone County against said estate was secured only by a lien on the particular tract of land for which it was created, and any residue remaining from the proceeds of the sale of such tract, after paying the indebtedness against it and the costs incurred in administering same, became a part of the general fund of said estate, which should have been first used and exhausted in paying the costs and expenses of administration before any resort could be had to the proceeds of the sale of property mortgaged to appellant for the purpose of paying such costs and expenses; and Limestone County was not entitled to have such surplus applied to the payment of the costs and expenses incurred in selling the remaining tracts of land on which it had liens and in enforcing its claims against same.

Each particular tract of land upon which Limestone County had a lien was liable for and chargeable with the expenses necessarily incurred in administering same and in making a sale thereof, and especially was it chargeable with the commissions of the administrator and the county judge on such sale; and the trial court erred in ordering the entire proceeds of such sales paid over to Limestone County, and in making all such costs and expenses a prior charge on the funds arising from the sale of the property mortgaged to appellants. Jackson v. Ivory, 30 S. W. Rep., 716.

*D. M. Smith* and *Levi Walker*, for appellees.—A claim against an estate secured by vendor's lien upon land sold by the holder of such claim to deceased during his lifetime in which an express lien is reserved, is superior to all other claims whatsoever, and if there be any general funds or funds arising from the sale of property secured by mortgage such funds should be applied to the payment of costs of administration before resorting to such preferred claim. Jackson v. Ivory, 30 S. W. Rep., 716; Clifford v. Cameron, 65 Texas, 243; Solomon v. Skinner, 82 Texas, 345; Maybry v. Ward, 50 Texas, 404; McClain v. Paschall, 47 Texas, 365; Robertson v. Paul, 16 Texas, 475.

A trust deed and mortgage, upon the death of the party by whom they are executed, only secures the creditor for whose benefit they

are given priority over such claims against the estate of the debtor as by statute they are entitled, in due course of administration, and can not be paid out of the proceeds of the sale of property thus mortgaged until all of the expenses of administration and exemptions have been fully satisfied; and in this respect is different to a claim for purchase money where the title to such property is not affected by the death of the vendee. Same authorities.

We respectfully submit that if the contention of appellants be correct, the holder of a preferred claim evidenced by purchase money lien who also holds the legal title to such lands has no better standing in a probate court than one who has only a mortgage lien. It is well established, however, that liens evidenced by mortgage and deed of trust other than for purchase money must give way to homestead and exemptions, and other claims known under the statute as first and second class.

We think it is equally clear that a holder of an express lien upon land of the deceased for the purchase thereof is protected against all claims of any class. There might be a case where there were no other assets, in which the costs of probating and collecting such claim could be taken from the proceeds of such sale, but in the case at bar the findings of the trial court show that money of a general fund was on hand more than sufficient to pay all costs which could be properly chargeable against Limestone County; besides there was about $18,000 in the hands of the administrator, a portion of which was realized from the sale of property on which appellants held a chattel mortgage.

Who then should pay the costs complained of by appellants? It may be true that if it were paid out of either the general fund or out of the $18,000 appellants would to that extent lose a portion of their debt, but such costs are prior under the statute to their lien, while the lien of Limestone County is superior to such claims.

Our contention is, that so long as there is any money which can be used to pay first and second class claims, the holder of a purchase money note under an executory contract can not be called upon to contribute any part of his money to relieve other creditors who only hold security which may be defeated altogether to meet homestead exemptions and all first and second class claims.

GAINES, CHIEF JUSTICE.—This controversy arose in the County Court in course of the administration of the estate of T. M. Riley, deceased. An appeal was taken to the District Court. The nature of the controversy and the case made upon the trial appear from the findings of fact filed by the judge who tried the case in that court. They are as follows:

"At the June term of the County Court of Montague County, Texas, C. H. Boedeker was duly appointed administrator of the estate of T. M. Riley, deceased, and that said administration is still pending in said court.

"That after setting aside the exemptions to the widow which has been done by said County Court, there were not enough assets to pay the debts of the deceased which were duly presented, allowed, and approved by the court.

"That Greer, Mills & Co. have a claim against said estate in the sum of $6000 which has been duly verified, allowed by the administrator, and approved by said County Court, and which said debt is secured by a valid mortgage upon certain cattle belonging to said decedent, and was placed by said court as a third-class claim; that W. B. Worsham had a claim of $4900, which was also verified properly and allowed by the administrator and approved by the court and placed as a third-class claim, and his claim was also secured by a valid chattel mortgage upon certain cattle belonging to said estate.

"That the cattle covered by said two mortgages were sold by the administrator under an order of the said court, directing the sale for the purpose of paying off the respective claims secured by such mortgages, and that the proceeds of such cattle failed to pay either of said claims by over $1000 on each claim.

"That during the lifetime of decedent, he had purchased from Limestone County seven different and distinct tracts of land, and for the purchase money of each respective tract he had executed his note, a lien being retained expressly upon each tract of the land for the purchase price of such respective tract.

"That Limestone County filed said seven notes, duly verified, with the said administrator, who duly allowed same, and they were each approved by the said court and placed as third-class claims.

"That the said tracts of land were all sold under an order of said court duly made upon the application of Limestone County, and four of said seven tracts sold for more than enough, each, to pay off the purchase price of such respective tract, together with the costs of the sale of said four tracts, including commissions, but the other three of said tracts each brought less than the purchase money due on each respective tract of such three tracts.

"That the costs of the administration in said court amount to $3500, and the excess which said four tracts of land (which sold for more than enough to pay off the lien against them respectively) brought above the liens against them, taken together with all the assets of said estate (which was not covered by valid and approved mortgages and third class claims) was not sufficient to pay said expenses and cost of said administration, but was more than sufficient to pay all costs incident to probating and collecting the amount due Limestone County.

"That there was money which came into the hands of the administrator from the sale of cattle and other personal property on which a mortgage lien existed, in the probable sum of $18,000.

"That over the protest of Greer, Mills & Co. and W. B. Worsham, the County Court ordered the administrator to pay to Limestone County all of the proceeds of the three tracts which sold for less than enough to

pay the lien against such tracts without allowing any part of such proceeds to be applied to the costs of collecting such debts, and that he ordered against the other four tracts to be paid in full, not deducting anything from debts due on said four tracts for expenses for collecting said four debts.

"That a part of the proceeds of the sale of the cattle on which said Greer, Mills & Co. and Worsham had such mortgage lien, was taken to pay the expenses of administration and commissions of the administrator and county judge, including the costs of collecting the debts due Limestone County, which costs and commissions would be about the sum of $300."

Upon the facts so found, the court concluded, as a matter of law, that: "I find that the order of the County Court appealed from is correct, and that Limestone County should not be required to pay any of the expenses or commissions incident to the collection of its said debts, and order the administrator to pay the said four debts in full which were secured by liens on the four tracts which sold for enough to pay such debts respectively, and to pay all of the proceeds of the three tracts which brought less than the debts against said respective tracts, to) Limestone County."

The District Court having rendered judgment in accordance with the conclusions so filed and the case having been appealed, the Court of Civil Appeals adopted the conclusions of the trial court and affirmed the judgment.

The effect of the judgment is to make the costs, in the cases in which the proceeds of the sales of the lands were not sufficient to pay both costs and debts in full, an indirect charge upon the proceeds of the sales of the cattle, subject to the mortgages of the plaintiffs in error; and, in our opinion, such a judgment is erroneous. It was held in the case of the City of San Antonio v. Berry, 48 Southwestern Reporter, 496, "that the costs of enforcing a lien are an incident of the debt and become a part of it," and that from the proceeds of the sale the costs are first to be paid. According to the principle established in this court ever since the decision in the case of Robertson v. Paul, 16 Texas, 472, a debt secured by a vendor's lien under an executory contract is not subject to be postponed to the expenses of administration or to other preferred claims under article 2091 of the Revised Statutes. As we think, it does not follow from this, the costs of enforcing such a lien— although an expense of administration—can be charged upon other property subject to some other incumbrances. When the proceeds of the sale of land subject to a paramount lien of the character specified are sufficient to pay the debt and cost of the proceeding for its enforcement, they must be applied to the satisfaction of such debt and costs in preference to all other claims. But when the proceeds are insufficient to pay both debt and costs, the costs must be first paid and what remains is to be appropriated to the debt. The unpaid balance of the debt then stands as an unsecured claim. This results from the principle that the

costs become a part of the debt. As such, they have a preference in payment as to the property subject to the lien; but, as to other property of the estate, are no more entitled to priority than the debt itself.

To our minds, it is grossly inequitable to charge the costs of enforcing one lienholder's lien upon the property subject to another's incumbrances.

The judgment of the Court of Civil Appeals and that of the District Court are reversed and the cause is remanded to the latter court with instructions to enter judgment requiring the debt due Limestone County and the costs of its enforcement to be paid in full in every instance in which the proceeds of the sale of the land subject to such debt are sufficient for that purpose; and also requiring that where the proceeds are not sufficient, to pay the costs therefrom and to apply the balance to the payment of the debt. All costs in the County and District courts will be adjudged against Limestone County. It is also here ordered that the county pay all costs which have accrued and may accrue by reason of the appeal and the writ of error.

*Reversed and remanded.*