## BUD BEARD v. THE STATE.

No. 2956.   Decided October 26, 1904.

**1.—Theft of Horse in Foreign Territory—Indictment.**

Where in the Territory of Oklahoma the statute, making the theft of horses a felony, horses are classified, while in the State of Texas the genus horse includes these different classes, and the indictment charged the theft of a horse in Oklahoma and subsequently bringing him into this State, the indictment is sufficient.

**2.—Same—Statutes of Territory—Presumptive Evidence.**

Where "Wilson's Revised and Annotated Statutes of Oklahoma" are by the act of the legislature of the Territory of Oklahoma made presumptive evidence of the laws of that Territory, an authenticated copy thereof is prima facie evidence of said laws in the District Court of the State of Texas, in a trial for theft of a horse in said Territory and subsequently bringing him into this State, and would stand until rebutted.

**3.—Same—Date of Law—Time of Commission of Offense—Foreign Laws Must be Alleged and Proved.**

Where the authenticated act of the Territory of Oklahoma, which makes "Wilson's Revised and Annotated Statutes of Oklahoma" presumptitve evidence of all laws of said Territory in force prior to its approval on the 16th day of March, 1903, and the section of said revised statutes which defines horse theft, bore date of February 14, 1895, said last named date is a part of said penal law and is prior to and covers a violation alleged on the 22d day of February, 1903, and the act which was approved March 16, 1903, simply had reference to the laws then existing and extant, and does not change the date thereof; and such evidence made a prima facie case of the existence of such law, which must

be alleged and proved. Following Carmisales v. State, 11 Texas Crim. App., 474; Hernanders v. State, 25 Id., 538; Clark v. State, 27 Id., 405.

### 4.—Stare Decisis—Foreign Law—Conflict of Authorities.

See opinion for discussion of principle and authorities (pro and con) that laws of foreign states and territories must be alleged and proved and that the doctrine of stare decises obtains.

### 5.—Charge of the Court—Theft of Horse in Another State.

Where a fair construction of the charge shows that the court required the jury to believe that appellant had committed the theft of the horse in the Territory of Oklahoma, it was sufficient.

### 6.—Same—Definition of Offense—Harmless Error.

Where the statutes of the Territory of Oklahoma defined larceny to be the taking of personal property by fraud or stealth, etc., and the court used the word "fraudulently" as employed in the law of this State defining theft, which, in the connection it was used in the definition of our statute, is more rigorous than the Oklahoma statute, the appellant could not complain even if a distinction existed between these words.

### 7.—Same—Principals, Definition of—Presence of Defendant.

Where the court in his charge required the jury to believe that appellant actually participated in the original taking of the horse alleged to have been stolen; otherwise to find him not guilty, the charge, under the evidence, was sufficient to be understood by the jury that he must be present and participating in such taking; especially where the evidence suggested that the other defendant was a mere boy and did not commit the theft in the absence of appellant.

### 8.—Same—Recent Possession of Stolen Property.

Where the court did not instruct the jury to consider the recent possession as a circumstance against the defendant, but required the jury, before they could consider the circumstances of possession at all in the case, the evidence must show there was an actual, conscious possession of the alleged stolen horse on the part of defendant and that this was recent, and unless they so found to acquit him, there was no error.

### 9.—Same—Verdict by Lot.

While the charge given to the jury as to the assessment of the penalty by lot is subject to criticism, it was not reversible error.

Appeal from the District Court of McLennan.    Tried below before Hon. Dan R. Scott.

Appeal from a conviction of theft of a horse in the Territory of Oklahoma, and subsequently bringing him into the State of Texas; penalty five years imprisonment in the penitentiary.

This is the second appeal of the case, Beard v. State, 45 Texas Crim. Rep., 522; 9 Texas Ct. Rep. 151; S. W. Rep. and the indictment appears in full in same appeal.    The horse alleged to have been stolen was taken from Oklahoma Territory and brought to Waco Texas.    He was missed by the owner in Oklahoma who had left him there at night in an inclosure and could not find him the next morning.    The next time he heard of the horse, he was in a livery stable at Waco, Texas.    Here he was brought by the defendant and one Bevil, a boy, who also had a horse and who with defendant came from Oklahoma, from the vicinity where the horse was taken.    The defendant took this horse to a livery stable and together with his companion borrowed three dollars on same and

said he was for sale. While the boy Bevil was negotiating a sale of the horse, he and the defendant were arrested and the owner came and identified the horse as his property. The defendant made several contradictory statements as to his connection with the property when arrested.

The different charges of the court which were especially attacked were as follows: "You are instructed that our statute provides that if any person who shall have committed an act in any foreign State or territory, which if committed in this State would have been theft of property, and shall bring such stolen property into this ·State, he shall be deemed guilty of, and shall be punished as if said act had been committed in this State, to-wit, by confinement in the State Penitentiary for any period of time not less than two nor more than ten years."

"So in this case if you believe from the evidence before you, that an act committed in the Territory of Oklahoma in which a person fraudulently takes from the possession of another any personal property without the owner's consent, and with intent to deprive the owner of the value thereof, and with intent to appropriate the same to the use and benefit of the person taking as defined by the laws of that territory, to be theft, and you further find from the evidence in this case beyond a reasonable doubt, that the defendant in this cause acting either alone or in connection with another, at the time and place and in the manner charged in this bill of indictment, in the Territory of Oklahoma, did unlawfully and fraudulently, take from the possession of J. W. Keas, one horse, without the consent of the said Keas, with intent to deprive said Keas of the value of said horse, and with intent to appropriate the same to his (defendant's) own use and benefit, and you further find that said horse was then and there the property of the said Keas, and you further find from the evidence beyond a reasonable doubt, that this defendant acting either alone or in connection with another, did fraudulently bring said horse into the State of Texas, and into the County of McLennan, at the time charged in the indictment, then if you so find the defendant would be guilty of theft of a horse under the laws of Texas, and if you so find you will so say and assess his punishment at confinement in the penitentiary for any term of years not less than two nor more than ten.

"Before you can find the defendant guilty of theft of the horse in question, you must believe that he, acting either alone or in connection with another person, actually participated in the original taking of said horse from the possession of J. W. Keas, and unless you find from the evidence beyond a reasonable doubt, that this defendant, Bud Beard, did actually participate with a fraudulent intent, in the original taking of said horse from the possession of said J. W. Keas, you will find the defendant not guilty.

"You are further charged that before you can consider the question of recent possession as a circumstance in this case, the evidence must show that the defendant had personal and actual possesion of the animal

in question, and that such possession if any, involved a distinct, conscious assertion of ownership in whole or in part, by the defendant, and if the evidence fails to satisfy you of that fact beyond a reasonable doubt, it will be your duty to acquit the defendant, and if you have a reasonable doubt as to whether such possession if any, was recent, you will acquit the defendant.

"It is not permissible under any circumstances for juries in fixing the penalty to be attached to any crime to decide the same by lot. It sometimes occurs that, when juries are unable to agree as to the punishment to be inflicted, they agree that each man shall set down what in his judgment the punishment should be, all of which to be added together, the sum total thereof to be divided by twelve, and the quotient so ascertained by that division to constitute the verdict of the jury. This conduct on the part of the jury has been denominated by the Court of Criminal Appeals as deciding the case by lot, which is not permissible, and vitiates the verdict of the jury, and you are instructed in this case that you must not consider any propositions of that character, but the punishment to be inflicted, if any, must be determined and agreed upon by each juror on the facts of the case as testified to by the witnesses and the law as given in charge by the court, and nothing else."

*Taylor & Gallagher,* for appellant. At a former day this court held the indictment herein good, and that the motion to quash was properly overruled. The learned judge, who delivered the opinion, in passing on this point cited Clark v. State, 27 Texas Crim. App., 405. If the court will examine this case more closely they will see that this case has no bearing whatever on the point at issue. In the Clark case the point was, whether a man could be punished under the laws of the State of Texas for the commission of a crime in the Cherokee Nation, after having brought said property into the State of Texas, when the man was not amenable to, or punishable by the laws of the Cherokee Nation. In passing upon this point Judge Hurt held, Clark, if guilty, was punishable under the laws of the State of Texas, for the reason that horse-theft was an offense against the laws of the Cherokee Nation, whether Clark was amenable to them, or punishable by them or not.

In the case at bar the issue raised is whether an indictment is good for horse-theft, which does not allege horse-theft or animal theft, but simply alleges ordinary theft under article 858 of the Penal Code, and does not allege the value of the property to be fifty dollars, or over.

This offense, with which the defendant is charged, if the same had been committed in the State of Texas, would have been theft of animals and not ordinary theft, and does not allege any specific value of the property stolen, clearly he could not be convicted of an offense, with which he is not charged, and we think that upon a more careful inspection by the court of the point raised, that they will hold that our motion

to quash said indictment should have been sustained by the court below.

All the approved forms of indictment in this class of cases, aver that the acts charged constituted an offense against the law of the foreign State or Territory at the time they were perpetrated. Of course, the evidence must correspond and must show what the law was in said foreign State or Territory on the point involved, at the very time of the commission of the alleged offense.

Article 2304, Revised Statutes of Texas, makes the printed statutes of any State or Territory in the United States purporting to have been printed under the authority thereof, evidence of the acts and resolutions therein contained. We submit that the attempted authentication of the statutes of Oklahoma does not meet this requirement. The compilation, if it was a compilation, called "Wilson's Annotated Statutes," is not adopted as the statute of Oklahoma, but is only made presumptive evidence thereof. We do not think this meets the requirements of our statute. We think nothing short of a positive declaration that the book is the statute law, brings it within the class of books rendered admissible by said article.

We think that even if said statute book was admissible, that it fails to establish the law at the time of this offense. The purported authentication took place nearly a month after the offense charged against appellant is shown to have been committed. It only purports to make said book presumptive evidence of the laws of Oklahoma prior to the Seventh Legislative Assembly. When said Legislative Assembly was held or when it was to be held, is not disclosed and a state of uncertainty exists whether the contents of said book was the statute law of Oklahoma on the 22nd day of February, 1903. To meet this uncertainty, the State offered in evidence, and the court admitted in evidence as complained of in our Bill of Exception No. 2, an annotation in small print interposed between the sections or articles, of the purported statute by which it was attempted to be shown that the statute against the theft of horses was a part of some act of February 14, 1895. We do not think that such annotations are any part of the statute proper. The volume purported to be a statute with annotations. Our statute only authorizes the admission of printed statutes and does not authorize the introduction of private annotations made by some editor getting out a personal copy of the statutes for sale on the merits of his annotations. We submit that the court erred in admitting this testimony for the reasons above indicated.

It was the duty of the trial court to correctly tell the jury what constituted theft under the laws of the Territory of Oklahoma as introduced in evidence in this cause.

The charge of the court in this case defines theft in Olkahoma according to the statute of Texas and not according to the statute of the Territory of Oklahoma, and said definition is error.

Said charge that theft in Oklahoma consisted of the same elements as theft in Texas, was unsupported by, and contrary to the evidence of the law of Oklahoma introduced in this case.

Even if theft in Oklahoma is to be tested by the common law (which is not admitted by appellant), then the definition given by the court is defective in failing to require the jury to find·that the act was done feloniously, and in further failing to require the jury to find that the property was carried away by appellant.

The charge of the court should have required the jury to find that the acts therein recited constituted theft in the Territory of Oklahoma at the time of the alleged taking of the horse described in the indictment. Penal Code of Texas, Art. 952; McKenzie v. The State, 32 Texas Crim. Rep., 568; Williams v. The State, 27 Texas Crim. App., 466; Carmisales v. State, 11 Texas Crim. App., 474.

There was no attempt on the part of the court to submit the issue of a taking by stealth, to the jury. Clearly, the use of the word "fraudulently" as used in the statutory definition of theft in this State, is not equivalent to "accomplished by fraud," as used in the statute of Oklahoma. Fraudulently, as so used refers to the knowledge and intent of the party at the time of the taking. A taking accomplished by fraud means one accomplished by some artifice, deceit, or stratagem practiced upon the party holding possession of the property. It is the equivalent in Oklahoma of the kind of taking referred to in Art. 861, of the Penal Code of Texas. Clearly we think the court did not charge the law of Oklahoma, and also we think, clearly, the charge on this phase of the case, is on issues not supported by the evidence. We believe that it is as much the duty of the court to correctly charge the law of the foreign State applicable to the testimony introduced, as it is to charge the law of Texas so applicable. It is an element of the case and we deem it unnecessary to cite authorities other than the statute itself which requires the trial court in felony cases, to correctly charge all the law of the case.

The testimony in this case having developed that one Arthur Beville, was in some way connected with the possession of this animal, and had actual and exclusive possession thereof, in McLennan County, at the time of the arrest of this appellant, and that said Arthur Beville, had pleaded guilty to the theft of said animal and gone to the penitentiary therefor, said charge as given was improper, erroneous and·defective in that it did not require the personal presence of the appellant at the time of the taking as well as his participation therein, the word "participation" being broad enough to include a conspiracy to take, or relation to the taking in the light of an accomplice or accessory, none of which kinds of participation would have authorized a conviction as a principal as charged in the indictment in this cause, and said testimony required an appropriate and proper charge upon the law necessary to make the appellant a principal as charged in the indictment.

The charge of the court requiring the jury to find that the defendant

actually participated in the original taking, did not necessarily require his personal presence at the time of the taking, but was consistent with any manner of connection with said taking without the personal presence of the appellant, and was positive error. Barnett v. State, 80 S. W. Rep., 1013; McDonald v. State, 79 S. W. Rep., 542; McAlister v. State, 76 S. W. Rep., 760; Criner v State, 53 S. W. Rep., 873; Dawson v. State, 41 S. W. Rep., 598; Bell v. State, 47 S. W. Rep., 1010; McCulloh v. State, 71 S. W. Rep., 278; Tittle v. State, 31 S. W. Rep., 677; Burgess v. State, 33 Texas Crim. Rep., 9.

On the proposition of the court's charge on recent possession, appellant excepted:

Because the same is on the weight of the testimony in that it assumes that the possession in this case was recent, and which is not corrected by an attempt to submit to the jury in conclusion, whether such possession was recent, and because the charge to acquit if the facts therein recited were not found to be true, was equivalent to a charge to convict if they were found to be true, which was upon the weight of the testimony.

Where recent possession is the sole evidence in the record of guilt and is relied upon for a conviction, the authorities cited below require that the possession of the accused shall be exclusive. In other words, the possession must not only point to the accused as the guilty taker, but it must exclude the idea that any one else might have been the taker. Lehman v. State, 18 Texas Crim. App., 174; Williamson v. State, 30 Texas Crim. App., 330; Boyd v. State, 24 Texas Crim. App., 570; Pogue v. State, 12 Texas Crim. App., 283; Dugger v. State, 27 Texas Crim. App., 95; Lowe v. State, 77 S. W. Rep., 220.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of the theft of a horse in the Territory of Oklahoma, and subsequently bringing the same into McLennan County, Texas; his punishment being fixed at five years in the penitentiary.

Appellant made a motion to quash the indictment, because he claims that the same is for general theft under art. 858 Penal Code, and not theft of a horse under art. 881 Penal Code; and that the indictment contains no value fixed to the property. We have examined the indictment carefully and it is not amenable to the criticism of appellant. As we read it, it is an indictment for bringing a stolen horse into this State; and by reference to the law of the Territory of Oklahoma, it will be seen that "horses" are made the subject of theft in said territory; that is, in their statute horses are classified, while in our State the genus horse includes a stallion, mare, gelding, etc. On the subject of indictments for offenses of this character, see Morales v. State, 21 Texas Crim. App., 298; McKenzie v. State, 32 Texas Crim. Rep., 568; Cummings v. State, 12 Texas Crim. App., 121; Smith v. State, 37 Texas Crim. App.,

342.   Under these authorities we think the indictment is sufficient, and the court did not err in overruling the motion to quash.

On the trial appellant reserved a bill of exceptions to the introduction of the statutes of the territory of Oklahoma on the subject of larceny.   We quote portions of said bill, as follows:

"(2465) Section 546.   Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof.

(2480) Section 561.   That if any person shall steal any stallion, mare, colt, gelding, ridgling, or any ass, genet, or mule, or any bull, cow, calf, steer, or stag he shall be guilty of a felony, and on conviction thereof, shall be punished by confinement in the Territorial penitentiary for a term (of) not less than one nor more than ten years.

Last Section.   Act.   February 14th, 1895.

Which two paragraphs aforesaid, are excerpts from a part of a certain printed volume then and there produced, entitled, 'Wilson's Revised and Annotated Statutes of Oklahoma, 1903.   By W. F. Wilson, M.A., LL.B., of the Oklahoma City Bar,' and which aforesaid volume had printed on the first page thereof, the following:

### AUTHENTICATION.

### COUNCIIL BILL No. 191.

### AN ACT

To make Wilson's Revised and Annotated Statutes of Oklahoma presumptive evidence of the laws of the Territory.

Be it enacted by the Legislative Assembly of the Territory of Oklahoma:   Section 1. That the two volumes published by the State Capital Company, entitled, 'Wilson's Revised and Annotated Statutes of Oklahoma, 1903,' is hereby presumptive evidence of all the laws of the Territory of Oklahoma in force prior to the acts of the Seventh Legislative Assembly and the publisher thereof is hereby authorized to insert on the title page of said work, the words, 'Published under the authority of the Legislative Assembly of the Territory of Oklahoma.'

Section 2. This act shall take effect and be in force from and after its passage and approval.

CHARLES R. ALEXANDER, *President.*

WM. BOWLES, *Speaker.*
Approved March 16, 1903.        T. B. FERGUSON, *Governor.*"

We do not copy the certificate of authentication, as no objection was made to that.

Appellant objected to the introduction of this evidence, because the same did not purport to have been printed under the authority of the Territory of Oklahoma, and because the same did not purport to have been passed as the laws of said Territory, but only purported to be presumptive evidence of the laws of said Territory in force prior to the acts

of the Seventh Assembly; and because it is not shown when the Seventh Assembly was held or otherwise properly fix the date at which time said printed book should be held as presumptive evidence of the laws of said Territory; and because said alleged authority purported to take effect on the 16th of March, 1903, a point of time subsequent to the time which the alleged theft in this case took place, according to the allegations in the indictment, and according to the testimony of the prosecuting witness J. W. Keyes. Appellant further objected to that portion of the evidence at the bottom of sec. 561, to wit: "Last Section. Act. February 14th, 1895," on the ground that said excerpt was printed in small type, and said excerpt constituted a note, and a notation in and to said purported volumes of statutes; and the same was not a part and did not purport to be a part of the statute law of the Territory of Oklahoma. The certificate of authentication to said laws of the Territory of Oklahoma, being conceded as sufficient, an objection to the introduction of the two sections defining larceny and making theft of horses an offense, cannot be sustained. The fact that the statute of the Territory of Oklahoma only made "Wilson's Revised and Annotated Statutes of Oklahoma *presumptive* evidence of the laws of the Territory," would, in our opinion, be no substantial ground for the rejection of said revised statutes of Oklahoma. The authorities divide presumptions into conclusive and disputable; and whether the act of the Territory of Oklahoma be the one or the other, it occurs to us is immaterial. If in the courts of that State the presumption would be conclusive and not subject to be rebutted by other evidence, we take it, that no question could be made. If the integrity of the laws could be rebutted by other testimony tending to show the illegality of the law found in said statute book in any respect, such evidence would certainly make a prima facie case, and appellant's objection to the testimony would be equally untenable. In this State, our statutes published by authority of the State are admissible in evidence of what the law is; but the integrity of the law can still be assailed by showing that the same was not passed in accordance with our Constitution. So, if it be conceded that the act makes "Wilson's Revised and Annotated Statutes of Oklahoma" only presumptive evidence of the integrity of the laws found in said volumes, and not conclusive, still, in our view, this would certainly afford a prima facie case, and would stand until rebutted.

A more serious question is presented as to the notation found in said volume, to wit: "Last Section. Act. Febraury 14, 1895." Reference to the record in this connection shows that the horse was alleged to have been stolen on February 22nd, 1903; and it is contended by appellant that said notation not being a part of the law should be rejected, then the only date shown is "Approved, March 16th, 1903," which being applicable to the entire laws introduced, would show that the law as to theft was only in force at said last date, and would not affect appellant's case, which occurred on February 22nd preceding; that is, the offense occurred about twenty-four days prior to when it is

shown the Territory had any law on the subject of theft of horses.
Recurring to the act making the volume in which the theft statute
admissible in evidence as embracing the laws of Oklahoma, it will be
seen, that said act makes Wilson's Revised and Annotated Statutes of
Oklahoma, 1903, presumptive evidence of all laws of the territory of
Oklahoma, in force prior to the acts of the Seventh Assembly. Now,
the date of the act is a part thereof, and whether it occurs at the begin-
ning or at the end, would make no difference. Here it occurs at the
end of section 561. Evidently, the act which was approved March 16,
1903, had reference to the volumes of laws then existing and extant.
The approval of March 16, 1903, is only found in connection with the
act authorizing Wilson's Revised and Annotated Statutes to be used as
evidence of the laws of said Territory; and does not, as we construe this
matter, embrace or refer to the sections 546 and 561, embodied in
Wilson's Revised and Annotated Statutes. If the laws were already in
existence, and the legislature passed an act authorizing Wilson's Statutes
of Oklahoma to be used as evidence, said last mentioned statute would,
of course, relate to and cover all pre-existing laws passed prior to the
acts of the Seventh Assembly. In other words, in our opinion, the
State by the introduction of this evidence, made a prima facie case of
the existence of the Territorial Law on the 22nd of February, the date
of the alleged offense; and if the law was not really and actually in
existence at that time, but came into existence after that, the onus was
thrown on appellant to show that fact. Under the authorities of this
State, for offenses of this character, it is held that the law of a foreign
State or Territory constituting the alleged transaction an offense must
be alleged and proved. Carmisales v. State, 11 Texas Crim. App., 474;
Hernandez v. State, 25 Texas Crim. App., 538; Clark v. State, 27
Texas Crim. App., 405. This is founded on the proposition that the
courts of our State do not take judicial cognizance of laws of other
States. The rule seems to be the same in civil cases. Anderson v.
Anderson, 23 Texas, 640; Jones v. Laney, 2 Texas, 342. However, some
later Texas civil cases, as to certain character of cases, appear to take a
different view, presuming that the laws of the other State or Territory
are similar to our own. Stephenson v. Pullman Pal. Car Co. (Texas
Civ. App.), 26 S. W. Rep., 112; Paul v. Chenault, 44 S. W. Rep., 682;
Blethen v. Bonner, 52 S. W. Rep., 572; Tex. Ry. Co. v. Gray, 65 S. W.
Rep., 85. For a further discussion of this subject and authorities, see
Amer. & Eng. Ency. of Law, vol. 13, 2nd ed. p. 1058; Green's Texas
Civil Digest, p. 4479, sec. 37. Of course, it will be conceded if we had
a statute authorizing our courts to take cognizance of the laws of for-
eign States, there would be no question as to this matter. If it were
an original question, in the opinion of the writer, our courts under these
statutes (articles 951, 952, Penal Code) would be required to take
cognizance of the laws of the other State or Territory. The laws of
such State or Territory constitute a part of the offense to be charged,
and in order to be an offense must be read into the law, inasmuch as a

foreign law has to be alleged. The question as to the existence of the foreign law is solely a matter for the court: the judge is required to instruct the jury with reference to the same; and according to my view, the court is required to take cognizance of such foreign law, when it involves an offense in this State and constitutes an essential element thereof. However, as heretofore stated, the authorities hold that a foreign law must be proven; and we hold that it was sufficiently proven in this case.

We do not think the court's charge is subject to the criticism of appellant, on the ground that it authorized them to convict defendant if he brought the property into Texas, regardless of whether the same was theft in the Territory of Oklahoma. We think a fair construction of the charge shows that the court did require the jury to believe that appellant had committed the theft of the property in the Territory of Oklahoma.

Nor do we agree with appellant in his criticism and endeavor to draw a distinction between the words "fraud," as used in the statute of Oklahoma, and "fraudulently," as used in our statute. We believe the effect of the charge was in appellant's favor, so far as the original theft was concerned, in that the court required the same elements constituting the offense as is required under our statute, whereas, the statute of the Territory appears to have been more liberal towards defendant; that is, less rigorous in its definition of the elements of the offense.

Nor do we think the court's charge on principals was erroneous. It required the jury to believe that appellant actually participated in the original taking of said horse: otherwise to find him not guilty. We do not believe the jury were misled by this, but they understood the court to mean that he was present and participated in the original taking. Moreover, we do not believe that the evidence here suggested that the other defendant, who appears to be a mere boy, committed the theft in the absence of defendant. Of course, there might be a case in which the court should more definitely describe what was meant by actual participation in the offense.

Appellant complains that the court gave a charge on recent possession, urging that the same was upon the weight of the evidence. We find no such charge in the record.

While the charge given to the jury as to the assessment of the penalty of lot is subject to criticism, as was said in Bowens' case, decided at present term, we do not think it sufficient to require a reversal. In our opinion, the court fully covered the issues raised by the evidence in his main charge to the jury, and none of the charges requested by appellant were required to be given.

The judgment is affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.
Vol. 47 Crim.—13.

HENDERSON, JUDGE.—This case was affirmed at a previous day of this term, and is now before us on motion for rehearing. In the original opinion we noticed the insistence of appellant as to the distinction claimed between the word "fraud" in the statutes of the Indian Territory, and "fraudulent" in our statute regarding theft. We held that the charge of the court, if anything, was more onerous in requiring the proof of the original theft in the Territory to come up to the definition of fraud in our statute; and that appellant could not complain, that the heavier burden was placed on the State in this connection. He again urges this distinction. We do not believe that we were in error in the former holding. In the statutes of the Indian Territory, the taking is required to be by fraud, and covers both the criminal intent and the means used. In Prim v. State, 32 Texas, 157, it is held that fraudulent taking refers to the wrongful or criminal taking. We fail to see the subtle distinction appellant attempts to draw in regard to the definition of these words, and abide by our former holding, that when the court required the taking to be fraudulent in the territory, it covered not only the means used, but also the criminal intent; and if anything, was more onerous on the State than the statutes of the Territory on the subject.

In the original opinion, we noticed appellant's assignment in which he criticised the charge of the court on recent possession, and remarked that we failed to discover any such charge in the record. Since then, appellant has brought up from the lower court the omitted charge, which is now before us, and is as follows: "You are further charged, that before you can consider the question of recent possession as a circumstance in this case, the evidence must show that the defendant had personal and actual possession of the animal in question, and that such possession, if any, involved a distinct and conscious ownership in whole or in part by the defendant, and if the evidence fails to satisfy you of that fact, beyond a reasonable doubt, it will be your duty to acquit defendant, and if you have a reasonable doubt as to whether such possession, if any, was recent, you will acquit the defendant." This charge evidently referred to the possession by appellant of the alleged stolen property at Waco, in the State of Texas. While there was some contest on this point, yet the proof was overwhelming on the part of the State, that he did have such possession, and it might be said there was no controversy on this point. However, if it was a controverted question, the charge was in favor of appellant. It did not instruct the jury to consider the recent possession as a circumstance against appellant, but required the jury, before they could consider the circumstance of possession at all in the case, the evidence must show there was an actual, conscious possession of the horse on the part of appellant, and that this was recent, and unless they so found to acquit appellant. This was certainly a charge favorable to appellant. He cannot complain of it.

The other assignments are thoroughly discussed in the original opinion, and it is not necessary here to reiterate what was then said. The motion for rehearing is accordingly overruled.

*Overruled.*

Brooks, Judge, absent.