### GUEST v. WILSON.
### No. 4614.

Court of Civil Appeals of Texas. Texarkana.
March 20, 1935.

Rehearing Denied April 4, 1935.

Hutchison & Fisher, of Paris, for appellant.

R. E. Eubank, of Paris, for appellee.

JOHNSON, Chief Justice.

Sarah Rogers was the tenant residing on Harry Wilson's farm in Lamar county during the year 1930, under terms of a rental contract agreeing to cultivate the farm to corn and cotton, and to pay Harry Wilson as rent one-third the corn and one-fourth the cotton produced on the farm during that year. Harry Wilson had sold and furnished Sarah Rogers on credit teams, tools, and supplies for the purpose of and necessary to produce the crop. She had sublet a part of the land to her son-in-law, Jack Hooks, as a share cropper. Sarah Rogers died July 21, 1930. She was survived by children, the number of whom and their ages are not shown in the record. They lived on the farm with her. At the time of her death Sarah Rogers was indebted to Harry Wilson for the teams and farming implements in the sum of $800, and for supplies in the sum of $465.10. The estate was insolvent. Sarah Rogers' son-in-law, Jack Hooks, applied to Harry Wilson for funds with which to bury Sarah Rogers. Wilson offered to advance the sum of $25. It is not shown that this sum was insufficient for the purpose. But Jack Hooks did not accept it and employed George M. Guest as undertaker to provide the funeral. George M. Guest's bill for such funeral expenses was $154.55.

After Sarah Rogers' death Harry Wilson furnished her children supplies to the amount of $53.42, with which to finish the crop. The children and son-in-law gathered and marketed the cotton. Of the proceeds of its sales they took out the price of picking, hauling, and ginning, and paid the remainder to Harry Wilson, the landlord. After feeding the corn to the teams they moved off the place and abandoned the teams and implements. Harry Wilson took possession of them and credited the team and implements note with the full price at which he had sold them to Sarah Rogers. Wilson applied the proceeds of the cotton on the rent and the furnishings account. Such proceeds paid the rent and all the furnishings account except $171.33, which amount is still due Harry Wilson.

After the crop was sold and the proceeds applied on the indebtedness as above stated, George M. Guest on December 3, 1930, applied to the probate court of Lamar county for letters of administration on the estate of Sarah Rogers, deceased, was duly appointed, qualified, and filed his claim, which claim was approved March 21, 1931, as a first class claim. Subsequently this suit was filed by George M. Guest as administrator of the estate of Sarah Rogers, deceased, against Harry Wilson, seeking to recover of Harry Wilson $340.72 as the approximate amount of money received by Harry Wilson from the proceeds of the sale of the cotton belonging to the estate of Sarah Rogers, and which had been applied by Harry Wilson in satisfaction of his landlord's lien for the furnishings account due him by Sarah Rogers.

Trial to a jury resulted in a judgment for defendant Harry Wilson, from which plaintiff prosecutes this appeal.

The main question presented by the appeal is whether or not the claim of appellant for funeral expenses is superior to appellee's landlord's lien. The question involves the effect to be given to chapter 19, title 54, Revised Statutes, relating to the classification and payment of claims in the administration of estates of decedents, especially articles 3531 and 3533 of said chapter, as to whether or not said articles shall, in the administration of an insolvent estate, be given the effect to displace or take precedence over the statutory landlord's lien as provided by articles 5222 and 5223, R. S., by subjecting the property upon which such landlord's lien exists to the payment of funeral expenses in preference to such landlord's lien. The articles under consideration recite:

"Art. 3531. *Classification of claims.*—

"The claims against an estate shall be classed and have priority of payment as follows:

"1. Funeral expenses and expenses of last sickness.

"2. Expenses of administration and expenses incurred in the preservation, safekeeping and management of the estate.

"3. Claims secured by mortgage or other liens so far as the same can be paid out of

the proceeds of the property subject to such mortgage or other lien, and when more than one mortgage or lien shall exist upon the same property, the oldest shall be first paid; but no preference shall be given to such claims secured by mortgage or other lien further than regards the property subject to such mortgage or other lien.

"4. All claims legally exhibited within one year after the original grant of letters testamentary or of administration.

"5. All claims legally exhibited after the lapse of one year from the original grant of letters testamentary or of administration."

"Art. 3533. *Order of payment of claims.*—

"Executors and administrators, when they have funds in their hands belonging to the estate, shall pay:

"1. Funeral expenses and expenses of last sickness, if the claims therefor have been presented within sixty days from the original grant of letters testamentary or of administration, but if not presented within such time their payment shall be postponed until the allowances made to the widow and children, or either, are paid:

"2. Allowances made to the widow and children, or either.

"3. Expenses of administration and the expenses incurred in the preservation, safekeeping and management of the estate.

"4. Other claims against the estate in the order of their classification."

"Art. 5222. *Landlord's lien.*—

"All persons leasing or renting lands or tenements at will or for a term of years shall have a preference lien upon the property of the tenant, as hereinafter indicated, upon such premises, for any rent that may become due and for all money and the value of all animals, tools, provisions and supplies furnished by the landlord to the tenant to make a crop on such premises; and to gather, secure, house and put the same in condition for marketing, the money, animals and tools and provisions and supplies so furnished being necessary for that purpose, whether the same is to be paid in money, agricultural products or other property; and this lien shall apply only to animals, tools and other property furnished by the landlord to the tenant and to the crop raised on such premises. * * *"

"Art. 5223. *When lien expires.*—

"Such preference lien shall continue as to such agricultural products and as to animals, tools and other property furnished to the tenant, as aforesaid, so long as they remain on such rented or leased premises, and for one month thereafter; and such lien as to agricultural products, if stored in public or bonded warehouses controlled or regulated by the laws of the State within thirty days after the removal of said products from said rented premises, shall continue so long as they remain in such warehouses; and such lien, as to agricultural products and as to animals and tools furnished as aforesaid, shall be superior to all laws exempting such property from forced sale."

It will be noted that "allowances made the widow and children, or either of them," are ordered paid prior to claims secured by "mortgage or other liens." In the case of Champion v. Shumate, 90 Tex. 597, 39 S. W. 128, 362, 40 S. W. 394, it is held that the landlord's lien is superior to the claim of the children for the allowance in lieu of exempt property. In that case, referring to what is now article 5223, R. S., it is said: "It places the landlord's lien above every character of claim, and it would not be in consonance with established rules of construction to make this statute upon this special subject subordinate to the general statutory provisions governing the administration of estates." In affirming the judgment of the Court of Civil Appeals, Mr. Justice Denman said:

"In this case the court of civil appeals held that the landlord's statutory lien on the crop raised on the rented premises for the agreed money rent is, in an administration upon the insolvent tenant's estate, consisting only of such crop, superior to the allowance in lieu of exempt property in favor of the minor children and unmarried daughter of deceased. * * *

"As to animals and tools furnished by the landlord, his lien seems to be clearly a vendor's lien, such as contemplated in article 2053; and it appears that the articles above cited place his lien on the crops on as high a plane as his lien on such animals and tools. This appears to be equitable, since the rent is the consideration for the lease of the land upon which the crops are grown. It would be manifestly unjust to allow the family of the tenant who happened to die within the year to claim as exemptions the very teams and tools furnished by the landlord, for which he had not received pay, or the entire crop produced upon the landlord's land, to the exclusion of the claim of the landlord for the value of such teams and tools, and rent for the land. This would be virtually taking the landlord's property and giving it to

the tenant's family. We do not think the statutes evidence so unjust an intent."

In the case of Walker v. Patterson's Estate (Tex. Civ. App.) 77 S. W. 437, 438, it is said: "We are of opinion that the court below. erred in holding that the claim for an allowance for a year's support for the widow and minor children of the deceased was superior to appellant's landlord's lien upon the crop of the tenant for supplies and advances during the year in which said crop was raised. In the case of Champion v. Shumate [90 Tex. 597, 39 S. W. 128, 362] 40 S. W. 394, our Supreme Court holds that the landlord's lien for rents is superior to the claim of the widow for an allowance in lieu of exempt property. The lien given the landlord by the statute for supplies and advances, teams and tools furnished the tenant is of equal dignity as that given for rents, and the claim of the widow for an allowance in lieu of exempt property is placed by the statute upon the same plane as the claim for a year's support. Such being the relative status of the several liens, it necessarily follows that, if the landlord's lien for rents is superior to the widow's claim for an allowance in lieu of exempt property, the landlord's lien for supplies and advances is superior to the widow's claim for an allowance for a year's support."

 The above decisions make it clear that the provisions of the statute classifying and ordering payment, allowances to the widow and minor children, prior to the payment of claims secured by mortgage or other lien, do not have the effect to supersede or displace the landlord's lien. The same reasoning applied in these cases is applicable to the case at bar. As to the animals and tools furnished by the landlord, his lien is in the nature of a vendor's lien, and the statute fixing his lien upon the crops places it upon as high a plane as his lien on such animals and tools. The obligations of the tenant for which the statute fixes the lien is the consideration due for the use of the landlord's property, land, animals, tools, and supplies furnished, in producing the crop. While this consideration is unpaid, and the lien exists, the tenant does not hold a complete or indefeasible title to such crop. The statute prescribes that while the rents and advances remain unpaid he shall not remove the property from the premises without the consent of the landlord. R. S. art. 5225. Until the rents and advances are paid, the landlord has a superior right to the property.

Such tenant's title is of no greater dignity than that of the vendee of land on which the purchase money is unpaid. In the case of Robertson's Adm'x v. Paul, 16 Tex. 472, it is held: "In this case, therefore, the property was first subject to the payment of the purchase money secured by the mortgage; and until that be satisfied, it will not be subject to any other claim, upon the estate, though having a preference over debts generally secured by mortgage. To vest an indefeasible title in the estate, which. will render the property subject to the payment of other claims ·upon it, the purchase money must be paid."

In the case of Greer, Mills & Co. v. Estate of Riley, 92 Tex. 699, 53 S. W. 578, 579, it is said: "According to the principle established in this court ever since the decision in the case of Robertson v. Paul, 16 Tex. 472, a debt secured by a vendor's lien under an executory contract is not subject to be postponed to the expenses of administration, or to other preferred claims, under article 2091 [now 3531] of the Revised Statutes."

We do not think the statutory classification of claims against the estate of a decedent is meant to displace or take precedence over the provisions of the statute specifically providing the landlords with a preference lien as given in article 5222.

The judgment of the trial court is affirmed.