## J. M. McKenzie v. The State.

*No. 153. Decided February 14.*

1. **Indictment—Counts—Separate Felonies—Pleading.**—It is a general rule, that there can be no such joinder of counts in the same indictment as include separate transactions in fact. Where, however, the transaction is the same, but the relation which the accused sustains to the transaction, and the facts connected therewith, are shrouded in doubt, *held*, the indictment may embrace, in separate counts, separate distinct offenses, in anticipation of and to meet the evidence; and such pleading is not only permissible but commendable practice.

2. **Same — Election Between Counts — Practice.**—Where an indictment charges, in separate counts, one or more distinct felonies pertaining to the same transaction, and the evidence adduced developes distinct transactions, the State should, at the request of the defendant, be forced to elect upon which count or transaction it will prosecute.

3. **Theft—Bringing Stolen Property into the State.**—The ingredients constituting the crime of bringing property, stolen in another State, Territory, or foreign country, into this State, as provided by articles 798, 799, Penal Code, are:

1. The acts and intents must constitute theft by the law of the country in which the property was taken.

2. Such acts and intents must constitute theft under the law of this State.

3. The thief must bring the stolen property into this State.

4. **Same—Venue of the Prosecution.**—Article 205 of the Code of Criminal Procedure provides, that "prosecutions for offenses committed wholly or in part without, and made punishable by law within this State, may be commenced and carried on in any county in which the offender is found." *Held*, on a prosecution for bringing stolen property into this State from a foreign Territory or State, that the county *in which the accused is found* in this State is the proper county in which he should be prosecuted for the crime.

5. **Same—Evidence—Recorded Mark and Brand—Common Law.** Article 4560, Revised Statutes, makes provision for the record of the marks and brands of the owners of animals by the clerks of the County Courts of the State, and article 4561 provides, that "no brand, except such as is recorded by the officer named in this chapter, shall be recognized in law as any evidence of ownership of cattle, horses, or mules upon which the same may be used." *Held*, on a trial for bringing an animal stolen in New Mexico into this State, that it matters not whether New Mexico has such a statute or not, the same is none the less obligatory; and unless recorded, as required by our law, the brand on the ani-

mal will not be recognized as any evidence that the animal belongs to any person. Nor has the common law rule of evidence any application in such case.

**6. Same — Unrecorded Brand — Actual and Special Ownership.** It is self-evident, that if an unrecorded brand is no evidence that the actual owner owns the animal, it therefore can not be evidence that the special owner has the management and control of the animal.

**7. Same.**—That the accused failed to claim authority from any one to take or kill the animal, does not make an unrecorded brand upon the animal evidence of ownership.

**8. Evidence — Acts and Declarations of Coconspirators, when and when not Admissible.** — When once a conspiracy or combination to commit crime is established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise is considered the act of all, and is evidence against all. Each is deemed to assent to or command what is done by another, in furtherance of the common object. But after the common enterprise is ended, whether by accomplishment or abandonment, no one is permitted by any subsequent act or declaration of his own to affect the others. If the enterprise be ended by accomplishment or abandonment, and whether the abandonment be voluntary or compelled, the acts and declarations of a conspirator are not evidence against any one but himself; and though the object of the conspiracy be not ended or accomplished, the acts and declarations of a coconspirator are not evidence against a coconspirator unless they are in furtherance of the common design.

**9. Same—Flight of one Coconspirator.**—The flight of one coconspirator is not evidence of guilt against another.

APPEAL from the District Court of Mitchell, on change of venue from Martin County. Tried below before Hon. WM. KENNEDY.

This appeal is from a conviction for theft of one head of cattle in the Territory of New Mexico, and for the bringing of the same into the State of Texas. The punishment assessed by the verdict and judgment in the court below was imprisonment for two years in the penitentiary.

Omitting formal averments, the indictment charged: "That J. M. McKenzie, late of the county of Martin, on the 5th day of June, in the year of our Lord one thousand eight hundred and ninety-two, with force and arms, in the Territory of New Mexico, did fraudulently and feloniously take, steal, and carry away from the possession of W. C. Cochran one cattle, the same being the corporeal personal property of the said W. C. Cochran, without the consent of the said W. C. Cochran, and with the intent to deprive the said W. C. Cochran of the value of the same, and to appropriate it to the use and benefit of him, the said J. M. McKenzie; which said acts by the law of the Territory of New Mexico then in force was the offense of theft, and which acts, had the same been committed in the State of Texas, would under the law of said State then in force have been theft; and the said J. M. McKenzie afterwards, to-wit, on the 5th day of June, 1892, did bring the aforesaid property into the said State of Texas· and the said J. M. McKenzie is now in the said Martin County, Texas.

"And the grand jurors aforesaid, upon their oaths, in said court, at said term thereof, do further present, that J. M. McKenzie, on the 5th day of June, A. D. 1892, in the Territory of New Mexico, did fraudulently and feloniously take, steal, and carry away from the possession of W. C. Cochran, one cattle, the same being the corporeal personal property of the said W. C. Cochran, without the consent of the said W. C. Cochran, and with the intent to deprive the said W. C. Cochran of the value of the same, and to appropriate it to the use and benefit of him, the said J. M. McKenzie; which said acts by the law of the Territory of New Mexico then in force was the offense of theft, and which said acts, had the same been committed in the State of Texas, would have been theft under the law of said State then in force; and the said J. M. McKenzie afterwards and on the 5th day of June, 1892, did bring the aforesaid property into Terry County, in the said State of Texas, said Terry County being then and now an unorganized county, and attached to said Martin County for judicial purposes.

"And the grand jurors aforesaid, upon their oaths, in said court do further present, that J. M. McKenzie, on the 5th day of June, A. D. 1892, in the county of Terry and State of Texas, said Terry County being then and now an unorganized county, and attached then and now to said Martin County for judicial purposes, did fraudulently take from the possession of W. C. Cochran one cattle, the same being the corporeal personal property of the said W. C. Cochran, without the consent of the said W. C. Cochran, and with the intent to deprive the said W. C. Cochran of the value of the same, and to appropriate it to the use and benefit of him the said J. M. McKenzie.

"And the grand jurors aforesaid, upon their oaths, in said court do further present, that J. M. McKenzie, on the 5th day of June, A. D. 1892, in the county of Andrews and State of Texas, said Andrews County being then and now an unorganized county, and attached to the said Martin County for judicial purposes, did fraudulently take from the possession of W. C. Cochran one cattle, the same being the corporeal personal property of the said W. C. Cochran, without the consent of the said W. C. Cochran, and with the intent to deprive the said W. C. Cochran of the value of the same, and to appropriate it to the use and benefit of him, the said J. M. McKenzie. Against the peace and dignity of the State."

The record is a most voluminous one, containing near 400 pages of closely typewritten matter, the statement of facts alone covering 301 pages. There are also forty-four assignments of error. It would be profitless to attempt to give, in substance, an outline of the testimony. Suffice it to say, that the McKenzies—father and two other sons besides appellant—owned extensive ranches, and were largely interested in the raising of cattle in the southeastern corner of the Territory of New Mexico, bordering upon the State of Texas. W. C. Cochran, the owner of the

alleged stolen animal involved in the prosecution, was likewise largely interested in cattle raising in New Mexico, where he also owned a ranch in the same section of the Territory as appellant. In the spring of 1892, E. W. McKenzie, brother of appellant, made a contract with Hurst, Black & Co. to deliver to them at their "Rocking Chair Ranch," in the Panhandle of Texas, some 300 miles distant, 900 head of yearling cattle, with the privilege of delivering as many as 1300 head if he could do so.

Appellant and one Henry Harding took charge of the gathering, driving, and delivering of the cattle from New Mexico to the parties named at said "Rocking Chair Ranch." After gathering the herd, they drove it about 250 miles to within the neighborhood of Clarendon, in Donley County, Texas, having passed through several counties in Texas en route.

On the 2nd or 3rd of July, about a month and a half after they had started to gather and to drive the herd to its destination, the parties were arrested, near Clarendon, for the theft of a number of cattle found in the herd, claimed by parties owning ranches in New Mexico and in counties in Texas adjacent to New Mexico; one of the animals found in the herd and claimed at that time being the animal in question. After their arrest, both appellant and Henry Harding executed bonds for their appearance to answer the various charges preferred against them for the theft of the alleged stolen animals found in and taken from the herd. It does not appear that after they were arrested these parties attempted to drive the remaining cattle to "Rocking Chair Ranch," in completion of the contract with Hurst, Black & Co., but the cattle were afterwards sold to other parties.

The evidence shows, that after the execution of the bonds to appear and answer for the theft of the cattle as aforesaid, Henry Harding fled to the Indian Territory, and his bonds were forfeited. It was also proved, that in the attempt to rearrest him in the Indian Territory afterwards, he resisted the arrest and fired upon the officers, and they upon him, the result being that he was badly wounded. This testimony about his flight, forfeiture of his bonds, resistance to arrest, etc., was permitted to be introduced by the State, over defendant's objection that the same was illegal and inadmissible against this appellant. This erroneous admission of this evidence is the ground upon which the case is reversed.

No further statement is deemed necessary.

*Cowan & Fisher, Smallwood & Smith,* and *Carter & Lewright,* for appellant.—1. The court erred in permitting State's witness A. McLish, an Indian Territory police officer, to testify, over objections of defendant, as to the arrest of Henry Harding in the Territory, and as to his declarations made long after the arrest of defendant, and long after the termination of the conspiracy between the defendant and Henry Harding was over, if any such ever existed. The State was permitted to prove by A.

McLish, that he was an Indian Territory police officer, and assisted in arresting Henry Harding in the Indian Territory, and testified that Harding resisted arrest and shot at the officers, and the officer at Harding, who was wounded in said fight, and to testify as to the conversation and statements of Henry Harding. This was objected to by the defendant at the time as irrelevant and hearsay, and that the conspiracy, if any, was over. The court overruled the objection, and the defendant excepted. Martin v. The State, 25 Texas Cr. App., 576; Menges v. The State, 25 Texas Cr. App., 710.

2. The court erred in admitting in evidence, over objections of defendant, the facts concerning the forfeiture of the bail bond of Henry Harding and his flight to the Indian Territory, after the defendant and Henry Harding's arrest, and after the conspiracy, if any, had terminated. Menges v. The State, 25 Texas Cr. App., 710; Martin v. The State, 25 Texas Cr. App., 576.

3. The court erred in paragraph 4 of its charge to the jury, in instructing them who are principals in the commission of the crime of theft in New Mexico; the law on that subject not having been introduced in evidence, nor was said charge a correct exposition of the common law.

4. The court erred in charging the jury upon the law of conspiracy; first, because the law of New Mexico upon this subject was not in evidence; second, nor is the charge correct according to the common law; third, the same is not correct according to the laws of Texas. Fernandez v. The State, 25 Texas Cr. App., 538; Williams v. The State, 27 Texas Cr. Ap., 466; Edwards v. The State, 29 Texas Cr. App., 453.

5. The court erred in paragraph 5 of his charge, in telling the jury that if the defendant committed the offense of theft of said cattle in the Territory of New Mexico, and brought the same to any place in the State of Texas, and was himself found in Martin County, Texas, when the indictment in this cause was filed, to find him guilty, instead of telling the jury that unless defendant brought the cattle into Terry or Martin Counties, Texas, to find him not guilty. Penal Code, art. 798; Willson's Crim. Stats., sec. 1399; Code Crim. Proc., art. 225; West v. The State, 27 Texas Cr. App., 474; Carter v. The State, 37 Texas, 363; The State v. Morales, 21 Texas, 298; Sutton v. The State, 16 Texas Cr. App., 490; 1 Whart. Crim. Law, secs. 930, 931.

6. The court erred in paragraph 11 of his charge, on the question of acts and declarations of Henry Harding, and in not telling them that they could not consider such acts and declarations done and made subsequent to defendant's arrest on July 3, 1892, in the Lewis pasture, in Donley County, Texas, and in not telling them that the conspiracy, if any ever existed, was terminated by such arrest. Code Crim. Proc., art. 677; Willson's Crim. Stats., sec. 2338; White v. The State, 18 Texas Cr. App.,

57; Burkhard v. The State, 18 Texas Cr. App., 599; Menges' case, 25 Texas Cr. App., 710; Martin's case, 25 Texas Crim. App., 576.

*S. H. Cowan, Ball & Burney,* and *R. L. Henry,* Assistant Attorney-General, for the State.—The acts and declarations of coconspirators made after the commission of the offense are admissible against each other, if such acts and declarations are in furtherance of any of the objects which may reasonably be presumed to have entered into the contemplation of the conspirators with reference to the offense, at any time during the existence of such conspiracy; such as concocting evidence or planning the means of an escape. Harris v. The State, 31 Texas Cr. Rep., 411; Mason v. The State, 31 Texas Cr. Rep., 306.

If one joins a conspiracy already formed, or joins with one who has done any act or made any declaration toward the commission of an offense, such person so joining with the previous principal, with or without the knowledge of such acts or declarations, and for the purpose of completing such offense, thereby adopts such acts and declarations, and they may be admitted in evidence against him, though made before he entered the conspiracy.

When persons engage in the commission of an offense, they certainly intend to reap the fruits of the crime, as well as to escape the punishment therefor. Any act, therefore, done in the furtherance or in connection with either one of these objects, is certainly legal testimony against either one of the conspirators, though done in his absence. And as these objects must always be accomplished after the commission of the offense, it follows that when such acts and declarations are offered in evidence, it develops that they occurred after the commission of the offense. The very reasons that induce criminals to engage in conspiracies at all are expected occurrences to take place after the commission of the offense; such, for instance, as dividing the fruits of the crime and planning a means of escape.

Therefore, in this case the State proved the flight of Henry Harding after his arrest, and his attempted flight when he was apprehended in the Indian Territory. The evidence shows that the defendant and Henry Harding were intimately connected together as friends, Harding being the employe of McKenzie; that they acted together in the gathering and driving of the herd; that Henry Harding had purchased the 4X brand of cattle the preceding spring; that J. M. McKenzie, or his brothers, owned the figure 8 brand; that on the trail Harding burnt out old brands in some instances, and rebranded the cattle with the 4X brand for some of them and the figure 8 brand for others; thus showing a division of the fruits of their crime. That at the time they started with the herd of cattle, according to McKenzie's own statements on the witness stand, the yearlings were to be delivered to Moore and Black, and the other cattle

they expected to sell if they could find a buyer, and if they could not find a buyer, to hold them until he could sell them. McKenzie went on ahead and engaged a pasture to keep them in; they were placed in that pasture; many of them had the fresh 4X brand on them, and some had other burnt brands, and were fresh ear marked. Harding and McKenzie when arrested both employed the same attorneys at Clarendon to defend them, and McKenzie gave a mortgage on the cattle to secure bondsmen for the two of them. At the examining trial the bond was forfeited and Harding did not appear. Just previous to that time Harding had gone back to McKenzie's herd, in the Lewis pasture, and there had long private conversations with both McDonald and other coconspirators, and procured a horse belonging to McKenzie and McDonald, and fled to the Indian Territory. McKenzie, being on bail, returned to the Lewis pasture in a few days afterwards, and having placed Buck McDonald in position as boss, rounded up the pasture; or rather he was there when the cattle association inspector rounded it up, when they cut out all the stolen cattle they could recognize. McKenzie had the yearlings cut out, in which class of cattle were included some of those branded with the 4X, and freshly branded, and claimed the X steer for Harding. McKenzie and Buck McDonald proceeded to the Rocking Chair pasture and made the delivery of the cattle, after Harding had been arrested in the Indian Territory. He also placed men in charge of the beef cattle, and left them in the Lewis pasture, where they remained for several weeks after Harding had been rearrested in the Indian Territory, when they were sold. As soon as Harding was arrested in the Territory, after risking his life and being wounded in an attempt to escape, he telegraphed McKenzie, and McKenzie and his brother at once appeared upon the scene, took charge of Harding, and rendered him all the assistance they could. It will be noticed also, that McKenzie had a ranch in the Indian Territory, or at least had cattle there in the locality to which Harding had fled, and where he was arrested. Harding was brought back to Texas and charged with the commission of the crime, as was McKenzie, and the recognizance shows that McKenzie's father and brother were sureties for Harding, and they employed the same attorneys.

Is it not clear, therefore, that the conspiracy between the parties was not only to take the property, but to get off with it and escape punishment? Such being our conclusion, the flight of Harding threw light upon the whole case, informed the jury of a fact which they were entitled to know, and we think clearly admissible. McKenzie assisted in it, and furnished Harding the horse on which to leave, thus making it his act. This is a case of circumstantial evidence, depending upon a great number of circumstances, and in such cases this court has said, "Turn on the light."

HURT, Presiding Judge.—Conviction for theft of one "cattle," the alleged property of Cochran.

The indictment was obtained in Martin County. The case was by the court, of its own motion, transferred to Mitchell County.

The first count of the indictment alleges that the property (cow) was by appellant stolen in the Territory of New Mexico, and was afterwards brought by him into this State, and that at the time of the presentment of the indictment he was in Martin County.

The second count is the same as the first, except that it charges that the defendant brought the cow into Terry County, and that it was unorganized, and was attached to Martin County.

The fourth count alleges the theft in Andrews County, and that this was an unorganized county, and attached to Martin County.

The first two counts declare upon the same transaction, differing only in regard to matter of venue. The third count declares apparently upon a distinct transaction from those designated in the first and second. The fourth upon its face declares upon a transaction separate and distinct from the first, second, and third.

We have in this indictment three distinct felonies, apparently, charged against appellant. If the animal was in fact stolen in New Mexico, it was not stolen in Terry County; and if stolen in Terry County, it was not taken in Andrews County. This pleading, however, is correct. In the same indictment there can be no such joinder of felonies as includes separate transactions in fact. Bish. Crim. Proc., sec. 448. What relation the accused bears to a certain supposed criminal transaction may frequently be shrouded in doubt. Was he a principal, accomplice, or a receiver in the transaction? Under such a state of case, counts for each are permissible, yea, commendable practice. And if there be doubt as to whether the property was taken beyond this State or in an attached county, the indictment should allege both. When upon the trial distinct transactions are developed, at the request of the defendant the State should be forced to elect upon which count or transaction it will prosecute. Such a request was not made in this case. We have mentioned this subject solely for the purpose of preventing mistakes in the future.

Two counts charge theft of the animal in New Mexico, and that the property was brought by appellant into this State, and that at the time this bill was presented appellant was in Martin County. The other, that the property was brought by him into Terry County, which was unorganized and attached to Martin County for judicial purposes. Either of these counts is sufficient, and if either be proven appellant was properly indicted in Martin County.

Counsel for appellant contend that this State has no authority to try and punish offenses committed beyond its jurisdiction, and that this offense was wholly committed in New Mexico, etc. Let us examine the

proposition. This State has no jurisdiction to try and punish a party for theft committed by him beyond its boundaries. But is this the case before us? Articles 798 and 799 define this offense: "If any person shall steal property beyond the boundaries of this State, and the acts and intents constitute theft in the foreign country, State, or Territory under the laws thereof, and said acts and intents constitute theft under the laws of this State, shall bring said property into this State, he is liable to the same punishment as if the theft had been committed wholly within this State."

What are the ingredients of this offense? First, the acts and intents must constitute theft by the law of the country in which the property was taken; second, such acts and intents must constitute theft under the law of this State; third, the thief must bring the stolen property into this State. This State does not propose to punish the party for theft committed beyond its borders, but proposes to punish him for stealing the property beyond its boundaries and bringing his plunder into this State. This is not only authorized by articles 798 and 799, but also by article 205, Code of Criminal Procedure, which provides, "Prosecutions for offenses committed wholly or in part without, and made punishable by law within this State, may be commenced and carried on in any county in which the offender is found." This prosecution was commenced (by indictment) in Martin County, the county in which appellant was found. This was correct practice, because this offense was committed in part without this State, and consummated in this State by the appellant bringing the stolen property into this State; that is, this is the theory of the State, and if in fact appellant did these things, Texas would have the right to try and punish him therefor, and the procedure under the first and second counts is correct. If guilty, appellant could not be punished for theft in New Mexico, but for the theft and the act of bringing the plunder into this State.

By bill of exceptions, it appears that Carrington (witness for the State) testified, that he was in control and that he had the management of a herd of cattle in New Mexico branded with a mallet; that he never gave his consent to the defendant to kill such an animal. Counsel for appellant objected, because the ownership of the cattle could not be proven by an unrecorded brand, ownership not having been proven otherwise. The objection was overruled, the court explaining, "That it is not shown that New Mexico has such a statute as ours, to the effect that a brand is not evidence of ownership unless recorded, and it would be evidence at common law. * * * It was not sought to prove ownership by the brand, but only care, control, and management." The defendant, on the stand as a witness, did not claim to have authority from any one to take or kill any mallet cattle.

Article 4560, Revised Statutes: "It shall be the duty of the clerks of

the County Court in the respective counties to keep a well bound book, in which they shall record the marks and brands of each individual who may apply to them for that purpose, noting in every instance the date on which the brand or mark is recorded; which record shall be subject to the examination of every citizen of the county at all reasonable office hours, free of charge for such examination.''

Article 4561, Revised Statutes: '' No brand except such as is recorded by the officer named in this chapter shall be recognized in law as any evidence of ownership of cattle, horses, or mules upon which the same may be used.''

Whether New Mexico has or has not a statute with such provisions as these, matters not, for unless recorded as required by our statutes the brand on the animal shall not be recognized by our law as any evidence that the animal bearing it belongs to any person. The common law has nothing whatever to do with this question, it being settled by our statutes. It is not necessary for us to discuss the question as to whether a brand properly recorded in another State or Territory would in the courts of this State be evidence of ownership.

Second explanation: If an unrecorded brand is not evidence that A owns the animal that bears it, evidently it is no evidence that A has the management and control of the animal. This proposition is self-evident.

Third: That appellant failed to claim from any one authority to kill the animal does not make an unrecorded brand evidence of ownership. The court should have sustained appellant's objection to the testimony of Carrington; and for the same reason, the evidence of J. M. Crowder and A. L. Crowley should have been excluded. Bills of exceptions numbers 16 and 17.

Bill number 18: McLish, an Indian police officer, testified, that about the 17th day of July, 1892, he arrested Henry Harding in the Indian Territory, and in making the arrest he and said Harding exchanged pistol shots. Counsel for appellant objected, because if there had once been a conspiracy between Harding and appellant, it had ended, etc.

Bill number 19: The State also proved by McLish that when he arrested Harding, he (Harding) stated that he did not expect to be caught so soon; that he expected to leave there that night.

Bill number 28: The State introduced in evidence two certified copies of bail bonds of Henry Harding, for his appearance before the examining court of Donley County on the 6th day of July, 1892, and certified copies of judgments declaring forfeitures of said bonds. To this bill the court appends the following explanation: '' The evidence was admitted on the hypothesis that the conspiracy was not at an end, the cattle not having been driven to the ' Rocking Chair' pasture or sold.'' Appellant and Harding were arrested on or about the 3rd day of July, 1892, and neither of

these parties was engaged in driving the herd to Rocking Chair pasture when Harding was arrested, or when his bonds were forfeited. What is the rule? "*Confessions of others*. As to the prisoner's liability to be affected by the *confessions of others*, it may be remarked, in general, that the principle of the law in civil and criminal cases is the same. In civil cases, as we have already seen, when once the fact of agency or partnership is established, every act and declaration of one, in furtherance of the common business, and until its completion, is deemed the act of all. And so on in cases of conspiracy, riot, or other crime perpetrated by several persons, when once the conspiracy or combination is established, the act or declaration of one conspirator or accomplice, in the prosecution of the enterprise, is considered the act of all, and is evidence against all. Each is deemed to assent to or commend what is done by any other in furtherance of the common object. Thus, in an indictment against the owner of a ship for violation of the statutes against the slave trade, testimony of the declaration of the master, being part of the res gestæ, connected with acts in furtherance of the voyage, and within the scope of his authority as an agent of the owner in the conduct of the guilty enterprise, is admissible against the owner. But after the common enterprise is at an end, whether by accomplishment or abandonment is not material, no one is permitted, by any subsequent act or declaration of his own, to affect the others. His confession, therefore, subsequently made, even though by the plea of guilty, is not admissible in evidence, as such, against any but himself. If it were made in the presence of another, and addressed to him, it might, in certain circumstances, be receivable, on the ground of assent or implied admission. In fine, the declarations of a conspirator or accomplice are receivable against his fellows only when they are either in themselves acts, or accompany and explain acts for which the others are responsible; but not when they are in the nature of narratives, descriptions, or subsequent confessions."

If it ever existed, the conspiracy was at an end, though the cattle were taken to Rocking Chair pasture. The members had been arrested, and Harding had forfeited his bond, and was in the Nation, doing nothing whatever in aid of the common design.

What a conspirator does or says may be evidence against his coconspirator, and it may not. This is the case, though the conspiracy may not be at an end. If ended by accomplishment or abandonment, and if the abandonment be voluntary or compelled, the acts and declarations of a conspirator are not evidence against any person but himself. Though the object of the conspiracy be not ended (accomplished), the acts and declarations of a coconspirator are not evidence against another coconspirator, unless they are in furtherance of the common design.

Application: If the exchange of shots between McLish and Harding, or Harding's flight to the Indian Territory, with consequent forfeiture of

his appearance bonds, were for the purpose of or tended to move, or aided in moving the cattle to Rocking Chair pasture, then these acts might be evidence against McKenzie, his supposed coconspirator. But how these acts could tend to or have that effect, is beyond our comprehension. The flight of one coconspirator is not evidence of guilt against another. The People v. Stanley, 47 Cal., 112.

The judgment of the court below is reversed and case remanded.

*Reversed and remanded.*

Simkins, J., absent.