Appellant was convicted of robbery, and his punishment assessed at confinement in the penitentiary for a term of thirty-five years; and prosecutes this appeal.
The circumstances of the case briefly stated, on the part of the State, show that appellant was a saloon-keeper or bartender in the City of Fort Worth; that prosecutor arrived on the train at Fort Worth sometime after midnight, and came into appellant's saloon, and called for a drink; subsequently he called for another drink. In the meantime he had begun playing dominoes with appellant, and after taking the second drink he became sick and began vomiting on the floor. Appellant told him that would cost him $7.50, and that he had better go back to a bucket toward the rear; prosecutor started there and appellant came up behind him and first ran his hand in prosecutor's left pocket, and prosecutor says he knew there was nothing in there and told appellant there was no money in there, to keep out of his pocket, *Page 363 
and that appellant immediately withdrew his hand and threw his left hand around him and ran his right hand in prosecutor's right pocket; prosecutor in the meantime was vomiting and had his hands on his head, but pulled his leg up to keep appellant's hand out; appellant, however, got hold of his pocket-book, and jerked his hand out. Prosecutor, subsequently, demanded his pocket-book and appellant denied getting it. Subsequently prosecutor procured an officer, and appellant was arrested, and the money or most of it was recovered. Prosecutor states that he was robbed of two $20 gold pieces, and $4.55 in change.
Appellant's testimony tends to show that prosecutor came into his saloon late at night and called for the best whisky he had; he gave him Scotch whisky at 25 cents a drink. Subsequently appellant and himself, and another party began playing dominoes, and prosecutor was stuck two or three games, took a drink of Scotch whisky each time, and it make him sick, and he vomited on the floor, and he gave appellant his purse and money to keep for him; that he only had one $20 gold piece, and 10 cents in change; that prosecutor lost several games of dominoes, and spent $4 or $5 with him before he give him his purse to keep. The next morning when appellant was arrested, he told the officers that he only got $20.10 from prosecutor, and that he left that with another bartender who relieved him at the saloon. Prosecutor, however, insisted that appellant got two $20 gold pieces from him, and appellant wanted to get off and go on his hunt, and paid the officers $20, and sent him to the saloon man for the other $20.10, which the saloon man gave to the officer. Appellant testified that he did not get from prosecutor but the one $20 gold piece and 10 cents in change, but that being enroute for the hunt at the time the officers came to him, he gave them the other $20 to get off. This is a substantial statement of the case.
Appellant insists that this was not robbery; that from the State's case no force was used and no assault made, and the money was taken without violence and putting in fear. In order to support his contention he refers us to Johnson et al. v. State, 33 S.W. Rep., 537. In that case there was no force used in taking the property. The prosecutor had his purse in his hand to make change, and while he was holding it in his hand appellant suddenly snatched the purse from him. It was held in that case that merely snatching a purse from one's hand, under such circumstances, under the authorities, would not constitute robbery. In Tones v. State, 13 Texas Ct. Rep., 722, the question of force necessary to constitute robbery was considered by this court. Our statute says that if any person by assault or violence or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another property with the intention to appropriate the same to his own use, he shall be guilty of robbery, etc. So that it would seem from the wording of this statute where one taking property by assault or by violence, or by putting in fear of life or bodily injury (without assault and violence), would be guilty *Page 364 
of robbery. However, concede, as appears to be conceded in some of the cases, that there must be an assault or violence and putting in fear, do the facts in this case show the essential elements of robbery. As heretofore stated, in Tones v. State, the question as to what amount of violence should be used in order to constitute the offense was discussed, and the authorities examined, and we held in that case that where the parties, who were officers, arrested prosecutor and took him into custody, and after they got him in jail or the calaboose they backed him up against the wall and held his hands up while one of them thrust his hand into his pocket and took therefrom the money: this was held to be sufficient force to constitute the offense. In the above case it was conceded the parties may have had a right to search prosecutor and take from him his valuables for safe-keeping, and this was a part of their defense. It is further suggested in that case that there must be some degree of force used and the taking must be against the will of the person robbed, yet it may seem to be with his consent when it is really delivered with fear. Now, what were the facts in this case. Evidently the prosecutor was nauseated in vomiting either from the effect of the liquor drank, or that in conjunction with some drug administered with the liquor, and he was in a measure helpless. Appellant, without prosecutor's consent, took hold of him, ran his hand first in prosecutor's left pocket; prosecutor told him to take his hand out; appellant then withdrew his hand from that pocket, threw his left hand around prosecutor as if to hold him, and then ran his right hand in prosecutor's right pocket. This prosecutor endeavored to prevent by lifting his leg and endeavoring to tighten his pocket against the insertion of appellant's hand, prosecutor, in the meantime, telling him to "Let my money alone, I ain't drunk at all, I am just only sick, I know what I am doing, let my money alone," and appellant, while prosecutor was still vomiting, seized his pocket-book and jerked it out of his pocket with the money in it. Prosecutor says that after this appellant went back and sat down, and as soon as he got through vomiting he went to him and asked him for his money, and he said he did not have it. Prosecutor then walked across the street seeking assistance to recover his money, and subsequently got a policeman. It occurs to us that this conduct of appellant was an assault; he laid his hand on prosecutor without his consent for an evil purpose; that is, with the intent to injure him; he ran his hand in prosecutor's pocket and this was a continuation of the violence, and manifested his intent and purpose, and without prosecutor's consent took from him his money, and he did this while prosecutor was protesting against it. It is true prosecutor does not say that he was made afraid or was duressed, but evidently he was either impotent to resist appellant's assault by the whisky, or some dope medicine, or he was put in fear. This is evidenced by his not insisting on the return of the money when he demanded it, and appellant told him he did not have it; he then sought an officer to recover it. It appears to us that this testimony *Page 365 
brings it within the rule as laid down in the Tones case, and differentiates it from the case of Johnson v. State relied on by appellant.
Appellant, by his first bill of exceptions, calls in question the action of the court in permitting the State to prove by appellant on cross-examination that he had been convicted for murdering his wife. This testimony was admissible as going to his credit. Appellant complains that the court did not allow him to ask the same question and elicit the same answer thereto for the third time, to wit: He asked the following question of prosecuting witness T.M. Miles: "How did you have your hands at the time the money was taken from you?" We believe it is within the sound discretion of the court to control the examination of witnesses and to prevent the repetition of questions and answers.
It may be that the prosecuting attorney should not, in connection with his objection to the testimony of the witness DeWitt, have remarked: "We object because it doesn't show it is the same transaction or anything of the kind; it might be some other theft that the defendant committed or something of that kind." On exception to this remark, the court told the jury not to consider it for any purpose, and also gave the special requested instructions of appellant on this subject. This cured any possible error.
Appellant objected to the remarks of the county attorney, in his argument to the jury, stating that "defendant Ed Williams had drugged the prosecuting witness and thereby rendered him helpless, and while in this helpless condition had robbed him of his money." We believe there is some testimony tending to show that the whisky was drugged with something to make prosecuting witness sick, and that the remarks were referable to the testimony in the case.
We do not believe it was incumbent on the court to instruct the jury further than was done as to how they should consider other offenses shown on appellant's cross-examination that he had committed.
From the discussion heretofore made with reference to the force used to constitute the offense, we believe that the court's charge on that subject was sufficient, and it did not become necessary for the court to give appellant's special requested instructions on that subject. In the view we take of it, from the State's evidence, there was no question of an assault and force used in taking the money, and an instruction embracing this proposition was given authorizing the jury to convict if they believed beyond a reasonable doubt that appellant took the money from prosecutor by means of an assault and without his consent, and on the other hand if they had reasonable doubt as to whether defendant committed an asasult upon the prosecutor and by reason thereof took said money from him, as charged in the indictment, then to acquit him. This charge adequately protected appellant, and it did not become necessary for the court to charge that a mere snatching of the money from prosecutor by appellant did not constitute an offense. No such case was made here. The defense set *Page 366 
up by appellant was that the money was given to him by the prosecutor for safe-keeping. Appellant denied even that he put his hand in prosecutor's pocket, and this defense was properly presented in the court's charge. Furthermore, we would observe that the court gave a special charge requested by appellant to the effect that appellant must have had an intent to appropriate the money in question at the very time he obtained same, and unless the jury so believed beyond a reasonable doubt to acquit him, and if they believed or had a reasonable doubt that appellant formed the intent to appropriate the money subsequent to the taking, to acquit him. This adequately covered the whole proposition of appellant's defense as set up by him.
There being no error in the record the judgment is affirmed.
Affirmed.