ROSIE LEE HAMMOND AND DOROTHY THOMASON v. THE STATE.

No. 14436. Delivered November 18, 1931.
Rehearing Denied May 11, 1932.
Reported in 49 S. W. (2d) 779.

The opinion states the case.

*Kirby, King & Overshiner,* of Abilene, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft from the person by taking of property so suddenly as not to allow time to make resistance; the punishment, confinement in the penitentiary for two years.

J. D. McCreless, the injured party, is a white man and appellants are negro women. McCreless had gone into the negro section of Big Spring in an effort to sell chickens. Touching the alleged theft of his money, he testified, in substance, as follows: He stopped his car in front of the house occupied by appellants. One of the appellants stated to him that they wanted to buy some chickens, and asked him to come into the house. When he had entered the house, appellants invited him to have sexual intercourse with them, insisting that he spend some money with them. When he refused to comply with their request, one of the appellants latched the screen door he had entered. He backed toward the door, turned and unlatched it. While he was trying to make the appellants keep their hands off of him, one of the appellants ran her hand in his pocket, seized his pocketbook, and ran out of the house, followed by the other appellant.

On cross-examination, the injured party said: "They came up and put their hands on me and began to fondle, yes, trying to pet me a little bit, and getting right up close to me both of them, yes, and they wanted to do a little business, that is what they said. They wanted me to spend some money with them. * * * I do know that both of them were trying

to love me up. * * * They did not put their arms around me nor put their hands on me and pet me, no. They just ran up and tried to and I told them not to. They did all they could. Both of them wanted to love me. I was not trying to get away all of the time, I started out— I was trying to get away. They did not grab me and take my money away from me, no, they did not do that. They did not have hold of me and grab it out of my pocket, no, as I turned out of the door, one of them ran her hand in my pocket. As to whether I felt it and knew she was getting it, I knew she got it, and I did grab at her and try to keep her from getting away, yes. I did not follow her up and try to catch her, I could not. She was gone too quick. I could not keep up with her."

Mr. McCreless testified further that he had between $7 and $8 in his purse, consisting of at least five $1 bills, some halves and quarters. He immediately notified the officers, who went with him to the scene of the theft. Appellants were not there. The officers, accompanied by Mr. McCreless, instituted further search, which led them to a house in which there were six or seven negro women in one room. The injured party, in looking over the group of negro women, pointed out the appellants. They were arrested, carried to jail, and searched. Appellant Dorothy Thomason had four $1 bills on her person. Appellant Rosie Lee Hammond had $2.30 in silver on her person. The purse of the injured party was found in some brush one block back of the house described as the scene of the theft. Appellants were positively identified by the injured party.

Appellants testified that they were not at the place described by the injured party, and denied that they took his money. Appellant Dorothy Thomason testified that the four $1 bills found on her person had been given to her by one Broadnax. Broadnax corroborated her testimony on this point.

Appellants contend that the evidence shows robbery by assault, and not theft from the person, it being urged that the testimony of the injured party manifests that there was actual violence to his person antecedent to the taking of his money. We are unable to agree with this contention. The state's testimony fairly interpreted, in our opinion, shows that at the time one of the appellants ran her hand into the injured party's pocket and took his purse, neither of the appellants had their hands on him. He testified that the purse was taken from his pocket as he was leaving the room and while he had his back to the party taking the purse. It appears that the purse was taken so suddenly as not to allow time for resistance. There was no evidence of a struggle. The mere fact that the appellants, had, prior to taking his purse, placed their hands on the injured party and fondled his person in an effort to induce him to have sexual intercourse with them, would not, in our opinion, raise the issue

of robbery by assault. The actual or threatened violence to the person antecedent to the robbery is a distinguishing element between robbery and theft. Harris v. State, 118 Texas Crim. Rep., 597, 39 S. W. (2d) 888, and authorities cited. See Johnson v. State, 55 Texas Crim. Rep., 411, 117 S. W., 964.

It was charged in the indictment that the property was taken so suddenly as not to allow time to make resistance before it was carried away. We think the allegation supported by the proof. The fact that the injured party may have attempted to resist after the purse was removed from his pocket does not present a question of the failure of the proof to support the allegations of the indictment. A taking of the property from the person includes a taking away thereof within the meaning of the statute. If the property was taken so suddenly as not to allow time to make resistance, it was also carried away so suddenly as not to allow time to make resistance. Dukes v. State, 22 Texas App., 192, 2 S. W., 590; Johnson v. State, 70 Texas Crim. Rep., 347, 156 S. W., 1181. The fact that after the owner knew that the accused had taken his property he might have prevented him from carrying it away does not alter or affect the case. Files v. State, 36 Texas Crim. Rep., 206, 36 S. W., 93. Of course, if the evidence had shown that the injured party knew that the appellants were attempting to take his purse, and submitted to same without resistance, it would not have been theft.

Appellants rely chiefly upon the case of Mayzone v. State, 88 Texas Crim. Rep., 98, 225 S. W., 55. We think that case distinguishable upon its facts from the case at bar. There the state's testimony was to the effect that Mayzone, while talking to the injured party, snatched some money from his hand and ran away. The conviction was for theft from the person by taking the property so suddenly as not to allow time for making resistance. The court said, in the course of the opinion, that there was some evidence of a struggle or resistance on the part of the injured party to the taking of the money. Whether this testimony came from state's witnesses or a witness for the accused is not disclosed in the opinion. There was also testimony tending to show that fraud was practiced in the taking of the money. Touching the theory of the state, and the evidence of resistance, the court said: "This presents three theories, one by the state as charged in the indictment, which if proved satisfactorily beyond a reasonable doubt would entitle the state to a conviction on the charge in the indictment. If there was resistance on the part of McReynolds when the money was taken in the struggle or scuffle, then the appellant would be entitled to an acquittal, because the allegation in the indictment that the money was taken so suddenly as not to allow time for resistance was not sustained." The court then discussed the question of fraud (third theory). The court held that the charge of the court, although probably not as specific and definite as it might have been, fairly

presented the theories supported by the evidence. The judgment was not reversed because of the failure of the state to support the allegation of theft from the person, but on other grounds. In the present case, as heretofore stated, there was no evidence that there was a struggle at the time the money was taken; nor was there any evidence that the injured party resisted or had time to resist before the money was taken from his pocket. On the contrary, the evidence showed, as we have stated, that the purse was removed from his pocket at a time when the parties did not have hold of him, and so suddenly as not to allow time for resistance.

Appellants bring forward a bill of exception wherein they complain of the action of the trial court in permitting the officers to testify touching the result of the search of their persons. It appears that the officers making the arrest had no warrant of arrest. Upon being notified by the injured party that his money had been stolen, the officers immediately instituted a search for the appellants. Upon finding them in a room with some other negro women, the officers arrested them after they had been pointed out by the injured party, and took them to jail. A search disclosed money on the person of each of the appellants. No question of the search of the residence of appellants is involved. As to Dorothy Thomason, we find that she testified to substantially the same facts touching the finding of money on her person as disclosed in the testimony of the officers. Hence she is in no position to complain that the search was illegal. In any event the opinion is expressed that the holding in Hepworth v. State, 111 Texas Crim. Rep., 300, 12 S. W. (2d) 1018, 1019, is applicable to the facts presented in the bill of exception. In Hepworth's case the officers arrested the accused without a warrant and found on his person stolen clothing. On the day after the clothing had been stolen, the arresting officer had reported to him that a man who fitted the description of the accused was on the streets carrying a parcel under his arm, which was supposed to contain the stolen clothing. The officers had no warrant when he arrested and searched the accused. In upholding the arrest and search, this court gave application to the provisions of article 325, C. C. P., reading as follows: "All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

In construing the foregoing article, this court said: "This article has uniformly been held to give the right to arrest without a warrant. Morris v. Kasling, 79 Texas, 141, 15 S. W., 226, 11 L. R. A., 398; Porez v. State, 29 Texas App., 618, 16 S. W., 750; Smith v. State, 13 Texas

App., 507; Childress v. State, 107 Texas Crim. Rep., 11, 294 S. W., 586. It is a wholesome statute, designed to give protection from thieves, and we have neither the inclination nor the legal right to nullify its salutary provisions by declaring its operation to be controlled by the terms of the search and seizure law, enacted long after article 325, and which neither expressly nor by necessary implication repeals it, in our opinion."

Bill of exception No. 2 complains of the action of the trial court in permitting Miller Nichols, a witness for the state, to testify, over the objection of appellants that the witness had remained in the courtroom and heard the testimony of other witnesses after the rule had been invoked. It appears from the bill of exception that the witness had been sworn and placed under the rule with the other witnesses, and was not thereafter excused from the rule; that he did not retire from the courtroom, but heard the testimony of all the witnesses on the witness stand who preceded him; that he was constable of precinct No. 1 in Howard county and was in attendance upon the court as a witness in behalf of the state. It further appears from the bill of exception that the witness testified to the fact of having found the pocketbook of the injured party in the vicinity of the scene of the theft, in some brush. The testimony given by the witness was undisputed. No effort was made to question the fact that the pocketbook of the injured party was found near the scene of the theft. It is the holding of this court that the question as to whether witnesses who have violated the rule or have not been placed under the rule shall be permitted to testify is addressed to the sound discretion of the trial court, and that, until the contrary appears, it will be presumed on appeal that such discretion was properly exercised. Branch's Annotated Penal Code, sec. 344; Cooper v. State, 72 Texas Crim. Rep., 250, 161 S. W., 1096. The opinion is expressed that it does not appear from the record that the discretion vested in the trial judge was abused.

Failing to find error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—We have reviewed the facts, and the conclusion is expressed that no error was committed in refusing to instruct the jury to acquit the accused if they believed that the money was taken from the injured party by force or if they had a reasonable doubt upon that subject.

The appellants' contention that the evidence of the result of the search

602

was improperly received is regarded as having been properly decided on the original hearing. In this motion for rehearing the appellants apparently fail to take note of the distinction between the facts controlling the decision of the Hepworth case, 111 Texas Crim. Rep., 300, 12 S. W. (2d) 1018, and the Davis case, 113 Texas Crim. Rep., 421, 21 S. W. (2d) 509. In the Hepworth case, the person of the accused was searched after his arrest and the result was properly received in evidence. In the Davis case, the officer, after making the arrest of the accused and taking him to jail, went to the residence of the appellant and made a search of it, which was held illegal. The distinction is clearly stated by Judge Martin in the report of the case in 113 Texas Crim. Rep., 421, 21 S. W. (2d) 511, in the following language: "This article (Art. 325, C. C. P., 1925,) has been given application in the recent cases of Hepworth v. State, 111 Texas Crim. Rep., 300, 12 S. W. (2d) 1018, and Childress v. State, 107 Texas Crim. Rep., 10, 294 S. W. 586. The distinction between the search of a private dwelling and the person of a suspected thief contemporaneously with a legal arrest who is caught with the stolen goods is obvious from the authorities. See Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed., 145, 51 A. L. R., 409; Chapin v. State, 107 Texas Crim. Rep., 477, 296 S. W., 1095; Battle v. State, 105 Texas Crim. Rep., 568, 290 S. W. 762; Houston v. State, 112 Texas. Crim. Rep., 261, 16 S. W. (2d) 119. The right of arrest carries with it the right of a contemporaneous search of the person, and, under some circumstances, of the place where the arrest occurs. But these are not the instant facts. Here the arrest had occurred several hours before. The home of accused was entered subsequently without the semblance of legal authority. This officer, or any other under like circumstances, became by such unlawful act a law violator himself, which neither the habiliments of office nor the exigencies of the occasion palliate or excuse."

See, also, Stokes v. State, 117 Texas Crim. Rep., 307, 35 S. W. (2d) 727.

The motion for rehearing is overruled.

*Overruled.*